UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| CAROLYN DUPLECHIN, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. H-10-2541 |
| | § | |
| JOHN POTTER, Postmaster General, | § | |
| United States Postal Service, | § | |
| | § | |
| Defendant. | § | |

## MEMORANDUM AND ORDER

Pending before the Court is Defendant's Motion for Summary Judgment ("Motion") (Doc. No. 11). After considering the motions, all responses thereto, and the applicable law, the Court finds that Defendant's Motion must be granted.

## I. BACKGROUND[1]

Plaintiff Carolyn Duplechin brings claims against John E. Potter, the Postmaster General of the United States Postal Service ("USPS"), under Title VII and the Age Discrimination in Employment Act of 1987 ("ADEA"). Plaintiff, a 51-year-old African American woman, began working at USPS in 1998. She was an Occupational Health Nurse with USPS, and her responsibilities in this job involved providing nursing care to USPS employees during both emergency and non-emergency situations. (Exs. A–C, Doc. No. 11-2.) Plaintiff was terminated following an emergency incident while she was on duty.

On March 19, 2008, USPS employee Deborah Jones was critically injured from a fall while working on the job. On that day, Plaintiff was on duty and working with Catherine Bonner, a contract nurse. A page was sent over the public address system requesting an on-site

---

[1] Unless otherwise noted, the background facts of this case are not in dispute.

nurse to come immediately to the North Dock, but, as the nurses in the Health Unit cannot hear any pages, USPS Supervisor Awilda Beverly called the Health Unit for assistance and spoke with Plaintiff.  Plaintiff states that she did not report to the North Dock immediately because she did not know the precise location of the incident at the North Dock and she did not know what type of injury Jones had sustained.  She asked Beverly to have "someone call [her] if employee is bleeding or possible broken bone etc."  (Plaintiff's Notes, Ex. I, Doc. No. 11-3.)  USPS Supervisor Michael Conner left the North Dock and came to the Health Care Unit to solicit help.  Plaintiff was putting away charts when he arrived, and went with Conner to the North Dock.

There is a dispute over the timing of these events.  Plaintiff's Notice of Removal, signed by Plaintiff's supervisor, Jennifer Campbell, states that Beverly called at approximately 6:15 p.m. and that it took Plaintiff over 21 minutes to respond.  (Notice of Removal, Ex. E, Doc. No. 11-3.)  Employees had to call an ambulance at 6:29 p.m., and it arrived before Plaintiff did at approximately 6:36 p.m., according to Campbell.[2]

USPS conducted an investigation regarding the emergency incident.  Plaintiff received her Notice of Removal on May 9, 2008, which stated that she was dismissed for "fail[ing] to immediately respond to an emergency telephone call for assistance and/or render aid to an injured employee."  (*Id.*)  The Notice of Removal states that Plaintiff violated various provisions of her employee manual and standard operating procedures.  (*Id.*)

Plaintiff was subsequently reinstated to her job through an arbitration procedure with a union representative.  The arbitrator did not rule on any issues related to discrimination.

---

[2] Plaintiff only disputes these times because she believes Campbell erred in converting the military time expressed in the Fire Department documentation to standard time.  However, Campbell is correct in stating that 18:29, the time of the call, is 6:29 p.m., not 6:17 p.m. as urged by Plaintiff.  Similarly, Plaintiff states the Fire Department reports that they reached the scene at 18:42, which would be 6:42 p.m., not 6:25 p.m. Plaintiff also states that "[a]ccording to PS Form 1997 the Health Case Record on 3/19/08 shortly after 6:20pm Conner and I were at the emergency scene."  (Duplechin Aff., Doc. No. 22, at 5.)  However, Plaintiff states that this form is attached as Exhibit 3 (*id.*), but Exhibit 3 contains only Plaintiff's work history and certifications.  (Ex. 3, Doc. No. 21-2.)

Defendant's Motion was filed on October 5, 2011, requesting summary judgment on all of Plaintiff's claims. Plaintiff requested and received three extensions of time. On December 2, 2011, she filed a one-page response (Doc. No. 23), directing the Court to various exhibits and attachments, including Plaintiff's Affidavit (Doc. No. 22). Defendant moved to strike based on the fact that the response was untimely and did not comply with requirements of this Court's procedures and the local rules, including a provision requiring citations to local authority. At a hearing on January 17, 2012, the Court allowed Plaintiff seven days to submit a supplemental response to the Motion for Summary Judgment. It also notified Plaintiff that the citations to exhibits contained in Plaintiff's Affidavit did not match the list of exhibits filed, and asked for an updated exhibit list. Plaintiff filed multiple requests for extensions of time, and the Court set a final deadline of February 15, 2012. Plaintiff failed to submit either an updated response or exhibit list by that date.

## II.  LEGAL STANDARD

A motion for summary judgment requires the Court to determine whether the moving party is entitled to judgment as a matter of law based on the evidence thus far presented. Fed. R. Civ. P. 56(c). Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Kee v. City of Rowlett*, 247 F.3d 206, 210 (5th Cir. 2001) (quotations omitted). A genuine issue of material fact exists if a reasonable jury could enter a verdict for the non-moving party. *Crawford v. Formosa Plastics Corp.*, 234 F.3d 899, 902 (5th Cir. 2000).

The Court views all evidence in the light most favorable to the non-moving party and draws all reasonable inferences in that party's favor. *Id*. "[T]he court should give credence to

the evidence favoring the nonmovant as well as that 'evidence supporting the moving party that is uncontradicted and unimpeached, at least to the extent that that evidence comes from disinterested witnesses.'" *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 151 (2000). The Court may not make credibility determinations or weigh the evidence. *Harvill v. Westward Communications*, L.L.C., 433 F.3d 428, 436 (5th Cir. 2005). Hearsay, conclusory allegations, unsubstantiated assertions, and unsupported speculation are not competent summary judgment evidence. Fed. R. Civ. P. 56(e)(1); *see, e.g.*, *McIntosh v. Partridge*, 540 F.3d 315, 322 (5th Cir. 2008); *Eason v. Thaler*, 73 F.3d 1322, 1325 (5th Cir. 1996); *see also Little v. Liquid Air Corp.*, 37 F.3d 1069, 1975 (5th Cir. 1994) (noting that a non-movant's burden is "not satisfied with 'some metaphysical doubt as to the material facts'") (citing *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986)). Additionally, any "affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated." Fed. R. Civ. P. 56(c)(4).

### III. ANALYSIS

Despite the deficiencies identified by Defendant with respect to Plaintiff's failure to cite authority and submit a proper Response, the Court wishes to decide Defendant's Motion on the merits.

#### A. Reverse Age Discrimination

In her affidavit, Plaintiff asserts that her claim is one of "[r]everse-age discrimination." (Aff. at 13.) She states that "[a]ll of the nurses working in the Medical Unit are older than I am," including Bonner, and that her supervisors treated her differently because she was "the youngest." (*Id.* at 13–14.) As the Supreme Court has held, the ADEA does not prohibit

employers from favoring older over younger workers. *General Dynamics Land Systems. Inc. v. Cline*, 540 U.S. 581, 600 (2004); *see also Ramon v. Continental Airlines Inc.*, 153 Fed. Appx. 257, 260 n.2 (5th Cir. Oct. 31, 2005). Accordingly, as the Court ordered at the hearing on January 17, 2012, Defendant is granted summary judgment on Plaintiff's claims based on reverse age discrimination.

### B. Race Discrimination

To survive summary judgment on a claim of unlawful racial discrimination, a plaintiff must show that there is a genuine dispute of material fact concerning her *prima facie* case. To establish a prima facie case of employment discrimination, Plaintiff must establish that she: "(1) is a member of a protected class; (2) was qualified for the position; (3) was subject to an adverse employment action; and (4) was replaced by someone outside the protected class, or, in the case of disparate treatment, ... that other similarly situated employees were treated more favorably." *Bryan v. McKinsey & Co., Inc.,* 375 F.3d 358, 360 (5th Cir. 2004). Defendant asserts that Plaintiff has failed to establish a prima facie case because she cannot establish a genuine dispute of material fact concerning the fourth element.

Defendant argues that the first prong of the fourth element, that the plaintiff was replaced by someone outside the protected class, does not apply because "Plaintiff is currently an employee of USPS and has been restored to her same position." (Mot. at 14 n.48.) The fact that Plaintiff has been restored to her original position would not bar Plaintiff's claims if she could establish that, at the time of her termination, she was replaced by an individual who was not a member of her protected class. Plaintiff implies, but never explicitly states, that she was replaced by a Caucasian woman, Catherine Bonner. Plaintiff's affidavit states that she "ha[s] a written statement that documented Bonner when she was promoted to being Injury

5

Compensation's Nurse Case Manager . . . when I was fired," (Duplechin Aff. at 33), but cites to "Exhibit ( )," which Plaintiff never identified, even after multiple requests from the Court to provide an updated list of exhibits. Nor does Plaintiff contend that she was previously the Injury Compensation's Nurse Case Manager, or that Bonner took over the duties that she previously performed. Defendant states that Plaintiff was an Occupational Health Nurse (OHN) (Mot. at 4), and Plaintiff confirms that she was on OHN. (Duplechin Aff. at 1.) Plaintiff's statement to the EEOC was that Bonner was given a full time position in on April 1, 2008, while Plaintiff was terminated on May 9, 2008. (EEOC Final Agency Decision, Doc. No. 11-4, at 10.) Bonner had been working on a more regular basis for about five months before the incident. (Duplechin Aff. at 24.) Plaintiff has presented no summary judgment evidence showing that Bonner replaced her or took over her job duties.

Thus, Plaintiff must show that other similarly situated employees were treated more favorably. Plaintiff has identified only one individual, Bonner, who she believes is similarly situated.[3] "[F]or employees to be similarly situated those employees' circumstances, including their misconduct, must have been "nearly identical." *Perez v. Tex. Dep't of Crim. Justice*, 395 F.3d 206, 210 (5th Cir. 2004) (citations omitted).[4] "The employment actions being compared

---

[3] Plaintiff's affidavit states that "Bonner is not my only comparator," but does not list anyone else. (Duplechin Aff. at 13.) Similarly, Plaintiff states that "[n]o other emergencies in the Houston District in the past had been investigated in order to incriminate a postal nurse and eventually lead up to termination, like this one did," but does not provide examples of other nurses or allege that anyone was similarly situated. (*Id.* at 9.)

[4] Defendant contends that "[i]n order for Nurse Bonner and Plaintiff to be considered 'similarly situated' they must share the same position, qualifications, and pay rate." (Mot. at 15 (citing *Shackelford v. Deloitte & Touche, LLP*, 190 F.3d 398, 405–06 (5th Cir. 1999); *Ortiz v. Shaw Group, Inc.*, 250 Fed. Appx. 603, 606 (5th Cir. 2007); *Perez*, 395 F.3d at 210). It appears that this requirement comes from unpublished Fifth Circuit opinions interpreting *Shackelford*. *See Barrientos v. City of Eagle Pass, Tex.*, 444 Fed. Appx. 756, 759 (5th Cir. 2011) (interpreting *Shackelford* to hold that "similarly situated means employees with the same position, qualifications, and pay rate"); *Ortiz*, 250 Fed. Appx. at 606 (same). While these are important considerations that should be considered, the Court finds nothing in *Shackelford* that held that plaintiffs must always prove that a "similarly situated" employee had all of these characteristics. The Fifth Circuit did not discuss either qualifications or pay rate in comparing similarly situated employees. *Shackelford*, 190 F.3d at 406. Moreover, this discussion occurred in the context of considering whether the plaintiff had shown that the defendant's proffered non-discriminatory reasons were pretextual, not in determining whether the plaintiff had proven a prima facie case. *Id.* at 404–05. The Fifth Circuit affirmed summary

will be deemed to have been taken under nearly identical circumstances when the employees being compared held the same job or responsibilities, shared the same supervisor or had their employment status determined by the same person, and have essentially comparable violation histories." *Lee v. Kansas City Southern Ry. Co.*, 574 F.3d 253, 260 (5th Cir. 2009).

Defendant first argues that Bonner and Plaintiff were not similarly situated in their positions. Plaintiff occupied a full time OHN position, whereas Bonner was a contract nurse who worked only when needed. (Duplechin Depo. at 86.) However, Plaintiff contends that their responsibilities were the same. (Duplechin Aff. at 2.)

Second, Defendant argues that Bonner and Plaintiff did not share "nearly identical" circumstances with respect to the emergency. As the Fifth Circuit has stated, "the similitude of employee violations may turn on the 'comparable seriousness' of the offenses for which discipline was meted out." *Lee*, 574 F.3d at 261 (citing *McDonald v. Santa Fe Trail*, 427 U.S. 273, 283 n.11 (1976). In Plaintiff's deposition, she outlined how nurses must respond to emergencies when there are two nurses on duty. Generally, one nurse handles the emergency situation and the other stays in the nurse's station. (Duplechin Depo. at 87.) The nurse that receives the call responds to the emergency. (Duplechin Depo. at 53; 86–87.) Plaintiff answered the call from Awilda Beverly, who told Plaintiff that an employee was injured at the North Dock. (*Id.* at 55; Duplechin Aff. at 3.) Plaintiff then began to put away her work in anticipation of getting more information about the emergency, (Duplechin Depo. at 65–66; 70), and went to the North Dock with Michael Conner when he came to the medical unit seeking the assistance of a nurse. (*Id.* at 70–71.) Although Plaintiff had the authority to order Bonner to come to the dock with her, she did not do so. (*Id.* at 72.) Rather, Plaintiff's allegations about Bonner's

---

judgment for the defendant because "the evidence is based on one or two isolated incidents and comparisons to non-similarly situated workers" and thus was "excessively speculative." *Id.* at 405–06.

wrongdoing stem from Bonner's attitude and statements about not wanting to go with Plaintiff to the dock:

> I asked Bonner did she want to go, stay or what? . . . Ms. Bonner called out my whole name "Carolyn Duplechin, I don't believe you asked me that!" She stated, I don't have keys to lock this Medical Unit, and I don't know the plant. I briefly explained how things work in the Medical Unit. Bonner's attitude continued out of control stating, "Hell, I can go home at anytime!" . . . Bonner continued being irrational stating, "There's probably nothing wrong. She's probably down there sitting on her Butt!" . . . Bonner showed no sympathy or remorse for the employee.

(Duplechin Aff. at 4.) Plaintiff has presented no evidence to show that Bonner was required to respond to the emergency and did, in fact, commit an offense of "comparable seriousness" in failing to respond. Accordingly, the Court must grant summary judgment on Plaintiff's race discrimination claims.

### C. Hostile Work Environment

To establish the elements of a hostile work environment claim, Plaintiff must show: (1) she belongs to a protected class, (2) she was subjected to unwelcome harassment, (3) the harassment was based on a protected characteristic, (4) the harassment affected a term, condition, or privilege of employment, and (5) her employer knew or should have known of the harassment and failed to take prompt remedial action. *EEOC v. WC & M Enters.,* 496 F.3d 393, 399 (5th Cir. 2007). The Fifth Circuit has recognized, in light of the Supreme Court's holdings in *Burlington Indus., Inc. v. Ellerth,* 524 U.S. 742 (1998), and *Faragher v. City of Boca Raton,* 524 U.S. 775 (1998), that, in circumstances where the alleged harassers have supervisory authority over the employee, only the first four elements need be satisfied. *See Watts v. Kroger Co.*, 170 F.3d 505, 509 (5th Cir. 1999). Defendant contends that Plaintiff's claim fails under elements three and five. However, Defendant's arguments also appear to implicate factor four, as he

contends that "the facts alleged here do not even come close to the facts that are necessary to show that a hostile work environment claim exists." (Mot. at 19.)

A Title VII violation occurs "[w]hen the workplace is permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." *Harris v. Forklift Sys.,* 510 U.S. 17, 21 (1993) (citation and internal quotations omitted). To qualify as "hostile or abusive," a work environment must be one that "a reasonable person would find hostile or abusive" and that the victim "subjectively perceive[s] . . . to be abusive." *Id.* at 21–22. This determination also must be made by looking at the totality of the circumstances, including "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Id.* at 23. A single incident of harassment, if sufficiently severe, could give rise to a viable claim of discrimination, and so too could a continuous pattern of much less severe harassment. *WC & M Enters.,* 496 F.3d at 400; *see also Harvill v. Westward Communications, L.L.C.*, 433 F.3d 428, 434–35 (5th Cir. 2005) ("Title VII provides a legal remedy to victims who establish that the abusive conduct was severe *or* pervasive." (emphasis in original)). A showing that the employee's job performance suffered is not a prerequisite, but only a factor to be considered. *WC & M Enters.,* 496 F.3d at 399–400 (citing *Mota v. Univ. of Tex. Houston Health Sci. Ctr.,* 261 F.3d 512, 524 n.33 (5th Cir. 2001)). The hostile work environment standard is a "demanding" one, and requires proof of severe or pervasive conduct that can be categorized as "extreme." *Faragher*, 524 U.S. at 788.

Without citing to any summary judgment evidence, Defendant contends that the only exhausted allegation has to do with the argument on the day of the incident. However, neither

party has provided the Court with a copy of Plaintiff's EEO complaint.[5] Because Defendant has not cited any evidence, the Court may not grant summary judgment on this basis, and will consider Plaintiff's additional allegations.

These additional allegations are detailed on pages 38 and 39 of Plaintiff's Affidavit. They include allegations that Plaintiff's supervisors and coworkers accused her of fabricating an EEO complaint after receiving discipline, called her into the administrator's office frequently in the last eight years, disciplined her for frivolous reasons, and publically embarrassed her when Campbell had Plaintiff escorted by two policemen when she was fired. (Duplechin Aff. at 38–39.) Plaintiff also alleges that other employees have lied about her, talked viciously about her, cursed her directly, accused her of lying, made "angry body contact" by physically bumping her, and slamming file cabinets by where she was standing or sitting in the nurse's station. (*Id.*) Additionally, earlier allegations in the affidavit stated that Campbell discriminated against Asian and Hispanic applicants and patients, (*id.* at 15–16), and, when Bonner was hired, stated, "Finally, I'm not the minority in here anymore." (*Id.* at 16.)

Plaintiff does not allege that any of the harassment identified was expressly based on her race. While incidents of non-race-based harassment may sometimes be motivated by racial animus, *see WC & M Enters.*, 496 F.3d at 398–99, the Fifth Circuit instructs courts to consider these incidents only if they are part of a pattern of race-based harassment. *See Hernandez v. Yellow Transp., Inc.*, 641 F.3d 118, 128 (5th Cir. 2011). No reference was made to race during Plaintiff's conversation with Bonner, and none of the other allegations expressly involved Plaintiff's race. While Plaintiff provided evidence of Campbell's statements and actions towards

---

[5] Paragraph III.1 of Plaintiff's Complaint (Doc. No. 1) states that her EEOC complaint is attached as Exhibit A, but no attachments were provided. Thus, the Court has no way of knowing which allegations were not exhausted.

Hispanic and Asian applicants and patients, it is not sufficient to establish a hostile work environment claim. As the Fifth Circuit has noted:

> [I]f the evidence of the workplace environment for the employees of a plaintiff's race does not show frequent, severe, and pervasive hostility, then evidence of hostility towards a different racial group is not much support for the plaintiff's claim. There at least needs to be evidence that the hostility towards a racial group different than that of a plaintiff is in some fashion probative of the claim of hostility towards the plaintiff's category of workers.

*Id.* at 127. Thus, the Court must grant summary judgment on Plaintiff's claim of hostile work environment.

### D. Retaliation

To establish a prima facie case of retaliation, Plaintiff must show: "(1) she engaged in protected activity; (2) an adverse employment action occurred; and (3) a causal link exists between the protected activity and the adverse employment action." *Turner v. Baylor Richardson Med. Ctr.*, 476 F.3d 337, 348 (5th Cir. 2007).

Citing *Clark County School District v. Breeden*, 532 U.S. 268, 273–74 (2001) and other cases, Defendant argues that, as a matter of law, Plaintiff's complaints are too attenuated from the termination to establish a causal link. Contrary to Defendant's contentions, Plaintiff need not show temporal proximity in order to prove a causal connection between the complaints and termination. "[T]he existence of a causal link between protected activity and an adverse employment action . . . may be seen in factors such as: (1) the employee's past disciplinary record, (2) whether the employer followed its typical policy and procedures in terminating the employee, and (3) the temporal proximity between the employee's conduct and termination." *Smith v. Xerox Corp.*, 371 Fed. Appx. 514 (5th Cir. 2010) (citing *Nowlin v. Resolution Trust Corp.*, 33 F.3d 498, 508 (5th Cir. 1994)).

However, Plaintiff has presented no connection between her termination or harassment and any of her previous complaints, which were made in 2005, 2006, and 2008. On the contrary, Plaintiff stated that Campbell's harassment began in 2003. (Duplechin Aff. at 38.) Plaintiff noted that one incident of harassment occurred when she was accused of fabricating an EEO complaint (Duplechin Aff. at 38), but suggests that this incident was just part of the general harassment she had endured since 2003. This type of allegation is insufficient to prove causation under the Fifth Circuit's standard. *See Smith*, 371 Fed. Appx. at 520 (finding that the plaintiff "was a long-tenured employee with no disciplinary history prior to 2005 who was subjected not only to termination shortly following the EEOC complaint but also to suspicious new charges of wrongdoing for arguably minor incidents following that complaint"); *Shirley v. Chrysler First, Inc.*, 970 F.2d 39, 43 (5th Cir. 1992) (finding it "surprising that suddenly, after [Plaintiff] filed her EEOC complaint, problems with her work began surfacing," and plaintiff's boss continued to mention her EEOC complaint at least twice a week). Because there is no allegation that Plaintiff's complaints were causally related to her eventual termination, the Court must grant summary judgment for Defendant on this claim.

## IV. CONCLUSION

For the reasons stated in this order, Defendant's Motion for Summary Judgment is **GRANTED**.

**IT IS SO ORDERED**.

**SIGNED** at Houston, Texas, on this the 12th day of March, 2012.

KEITH P. ELLISON
UNITED STATES DISTRICT JUDGE